UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JENNY MATADI,<br><br> Plaintiff,<br><br> v.<br><br>WASHINGTON METROPOLITAN<br>AREA TRANSPORTATION AUTHORITY,<br><br> Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 20-cv-03449 (APM)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

**I.**

Plaintiff Jenny Matadi brings this action against Defendant Washington Metropolitan Area Transit Authority ("WMATA") for negligent maintenance of the L'Enfant Plaza Metrorail Station. Notice of Removal, ECF No. 1 [hereinafter Notice of Removal], Compl., ECF No. 1-2 [hereinafter Compl.], ¶ 4. Plaintiff claims that, at approximately 6:30 p.m. on January 16, 2019, she was struck on the head by a piece or block of ice that fell from the architectural canopy above the street-level escalator leading to the Maryland Avenue entrance of the L'Enfant Plaza Metrorail Station. Def.'s Mot. for Summ. J., ECF No. 13 [hereinafter Def.'s Mot.], Def.'s Statement of Material Facts, ECF No. 13-2 [hereinafter Def.'s Facts], ¶ 6; Pl.'s Reply to Def.'s Mot., ECF No. 14 [hereinafter Pl.'s Opp'n], at 1. Plaintiff asserts that WMATA was negligent in failing to clear snow and ice from the architectural canopy. Compl. ¶¶ 5–6.

Plaintiff filed the instant Complaint in D.C. Superior Court on November 16, 2020. *See* Notice of Removal. The case was removed to this court on November 25, 2020. *Id.* WMATA filed its Motion for Summary Judgment on January 28, 2022. *See* Def.'s Mot. WMATA

argues that it is entitled to summary judgment because it enjoys sovereign immunity from Plaintiff's claims. *See* Def.'s Mot., Def.'s Mem. of L. in Supp. of Its Mot. for Summ. J., ECF No. 13-1 [hereinafter Def.'s Mem.], at 3–7. Alternatively, WMATA maintains that summary judgment must be granted because Plaintiff has failed to establish—as required to make a prima facie case of negligence—both a national standard of care and WMATA's awareness of a defective condition on its property. *See* Def.'s Mem. at 7–10.

For the reasons that follow, WMATA's motion is granted.

## II.

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" only if a reasonable factfinder could find for the nonmoving party and a fact is "material" only if it is capable of affecting the outcome of litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the court must both view the evidence and draw reasonable inferences in the light most favorable to the non-moving party, *see Scott v. Harris*, 550 U.S. 372, 378 (2007), the non-moving party must present affirmative evidence showing a genuine issue for trial, *Anderson*, 477 U.S. at 257. Further, the entry of summary judgment is required against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III.

#### A.

WMATA asserts that it has sovereign immunity from Plaintiff's claims. *See* Def.'s Mem. at 3. This defense implicates the court's subject matter jurisdiction. *See Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir. 1997) ("[S]overeign immunity claims are jurisdictional . . . .").

WMATA's claim of sovereign immunity stems from the terms of its founding. WMATA was created by an interstate compact ("the Compact") signed by Maryland, Virginia, and the District of Columbia and enacted with congressional consent. Def.'s Mem. at 3; *see* D.C. Code § 9-1107.01 (2022). In forming the Compact, the signatories conferred upon WMATA their respective sovereign immunities. *See Morris v. WMATA*, 781 F.2d 218, 219–20 (D.C. Cir. 1986). When sovereign immunity applies, federal courts may not adjudicate private actions against the immune entity absent an express waiver of that immunity. *Workagegnehu v. WMATA*, 373 F. Supp. 3d 110, 116 (D.D.C. 2019) (citing *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253–54 (2011)). Section 80 of the Compact outlines the scope of this waiver: "[WMATA] shall be liable for its . . . torts and those of its . . . employees and agent[s] committed in the conduct of any proprietary function . . . but shall not be liable for any torts occurring in the performance of a governmental function." D.C. Code § 9-1107.01(80) (2022). Under this provision, the key issue is whether the function in question is "governmental" rather than "proprietary." *Sanders v. WMATA*, 819 F.2d 1151, 1154 (D.C. Cir. 1987). If the former, then sovereign immunity applies. *See id.*

There are two alternative tests for identifying "governmental" functions under Section 80. *See Burkhart*, 112 F.3d at 1216. If an activity is a "quintessential government function, such as police activity, it is within the scope of WMATA's sovereign immunity," *id.* (cleaned up), and the

3

inquiry ends there.  WMATA does not contend that snow and ice removal is a "quintessential government function."  Alternatively, if an activity is *not* a quintessential governmental function, "immunity will depend on whether the activity is 'discretionary' or 'ministerial,'"[1] with "[o]nly those activities considered 'discretionary' . . . shielded by sovereign immunity."  *Id.*

To determine whether an activity is in fact discretionary, courts employ another set of alternative tests.  *Cope v. Scott*, 45 F.3d 445, 448 (D.C. Cir. 1995).  If a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (internal quotation marks omitted), the prescribed course of action is deemed non-discretionary and sovereign immunity does not bar suit against an employee's failure to comply.  *Cope*, 45 F.3d at 448.  If, however, the governing statutes do not prescribe a course of action but rather leave room for "choice," an exercise of that choice is immune from private action if it is "susceptible to policy judgment and involve[d] an exercise of political, social, or economic judgment." *Id.* (internal quotation marks omitted) (citing *Gaubert*, 499 U.S. at 325).

Applying this test for discretionary activity, WMATA argues that it has sovereign immunity because "WMATA's snow and ice removal efforts are discretionary."  Def.'s Mem. at 6.  WMATA points to its internal policy for snow and ice removal at its Metrorail stations, *see* Def.'s Mot., Ex. 9, ECF No. 13-11 [hereinafter Lloyd Decl.], Ex. A [hereinafter Severe Weather Plan], which, among many employee duties set forth in order of priority, does not include the removal of snow and ice from architectural canopies above its stations.  *See generally id.*; Def.'s Mem. at 6–7.  WMATA contends that, because the Severe Weather Plan does not set forth specific

---

[1] The dichotomy between "discretionary" and "ministerial" has been imported from the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2680 (2022).  *See Sanders*, 819 F.2d at 1154–55 (affirming that the conception of a "governmental function" under 28 U.S.C. § 2680 (1946), as established by *Dalehite v. United States*, 346 U.S. 15 (1953), applies to the scope of WMATA's sovereign immunity).

4

procedures that WMATA employees must follow, employees "must use their discretion in determining how to remove snow and ice." *See* Def.'s Mem. at 6; *see also* Def.'s Facts ¶¶ 15–16;[2] Lloyd Decl. ¶¶ 6–7.  WMATA also states that "WMATA's snow and ice removal efforts do not include clearing snow or ice from architectural canopies." *See* Def.'s Facts ¶ 19; *see also* Lloyd Decl. ¶ 11.  Because WMATA's decision not to clear snow or ice from the L'Enfant Plaza architectural canopy is rooted in "economic, political, and strategic factors, including safety, equipment and personnel limitations, and maintaining unencumbered access to its rail stations," WMATA argues that the decision is necessarily discretionary and thus shielded by sovereign immunity.  *See* Def.'s Mem. at 6.

Although the court agrees with WMATA that it enjoys sovereign immunity in this case, the court's reasoning differs from WMATA's.  *Cf. Noel Canning v. NLRB*, 705 F.3d 490, 496 (D.C. Cir. 2013) ("[F]ederal courts, being courts of limited jurisdiction, must assure themselves of jurisdiction over any controversy they hear, regardless of the parties' failure to assert any jurisdictional question.").  WMATA is right to construe its internal policy as the relevant "federal statute, regulation, or policy" for purposes of finding discretionary activity.  *See Workagegnehu*, 373 F. Supp. 3d at 117–18 (finding that, although the D.C. Circuit has not spoken on the matter, the D.C. Court of Appeals and many courts in this District have held that an internal WMATA policy may qualify as a "statute, regulation, or policy" as required under the first step of the sovereign immunity test).  But WMATA's characterization of its Severe Weather Plan is inconsistent.  WMATA's sovereign immunity argument depends on construing the Severe

---

[2] Plaintiff includes a Response to Defendant's Statement of Material Facts in the same document as her opposition. *See* Pl.'s Resp. at 7–8.  In it, she states that she "cannot admit that . . . Defendant's statements 15-20 are not in dispute . . . for the reasons stated in" her legal argument and because "the factual statements include argument and conclusions drawn by WMATA and not factual statements."  *See id.* at 8.  She does not dispute the contents of the Severe Weather Plan.  *See id.*

5

Weather Plan to give WMATA's employees choice—discretion—in how they remove snow and ice from its stations, including from their overhanging architectural canopies. *See* Lloyd Decl. ¶¶ 6–7 ("WMATA's severe weather plan does not set forth specific procedures on how WMATA employees are expected to remove snow or ice. WMATA employees exercise their discretion in removing snow and ice."); Def.'s Mem. at 6 ("WMATA's plan does not set forth specific procedures that WMATA employees must follow. Rather, they must use their discretion in determining how to remove snow and ice." (citations omitted)). Simultaneously, however, WMATA asserts numerous times that its policy for snow and ice removal expressly *excludes* architectural canopies altogether. *See* Lloyd Decl. ¶ 11 ("WMATA's snow and ice removal efforts do not include clearing snow or ice from architectural canopies over its escalators . . . ."); Def.'s Mem. at 6 ("WMATA does not clear snow or ice from architectural canopies outside its stations . . . ."). It cannot be that the Severe Weather Plan both gives employees discretion whether to clear snow and ice from architectural canopies and categorically excludes architectural canopies from WMATA's snow-and-ice-removal efforts.

The court finds the latter proposition more convincing: removal of snow or ice from architectural canopies is simply not a safety measure that WMATA employs to mitigate hazardous conditions in cold weather. And, importantly, the Severe Weather Plan does not grant employees the discretion to remove snow or ice from canopies. WMATA itself says that it "does not" remove snow and ice from architectural canopies. *See* Def.'s Mem. at 6; *see also* Def.'s Facts ¶ 19; Lloyd Decl. ¶ 11. It explains: "WMATA's snow and ice removal efforts do not include clearing snow or ice from architectural canopies over its escalators, because WMATA has determined that doing so would pose a safety hazard for patrons and employees, and would impede the flow of traffic into and out of Metrorail stations." Lloyd Decl. ¶ 11. WMATA thus justifies its internal policy—

6

rather than any individual employee's discretionary decision—based on relevant "economic, political, and strategic factors." Def.'s Facts ¶ 19–20.

The plain text of the Severe Weather Plan reflects WMATA's policy choice. The D.C. Court of Appeals has looked to the language of WMATA's internal policies for indicia of discretion. *See, e.g.*, *WMATA v. Barksdale-Showell*, 965 A.2d 16, 22–23 (D.C. 2009) (finding discretion within an internal policy where it suggested a particular action be taken "if possible"); *Robinson v. WMATA*, 676 A.2d 471, 474–75 (D.C. 1996) (finding discretion where an internal policy authorized employees to act in their "best judgment" and "adjusted to fit the immediate situation"). Consistent with this, courts in this District have found a *lack* of discretion where WMATA's internal policy prescribes a clear list of responsibilities. *See, e.g.*, *Whiteru v. WMATA*, 258 F. Supp. 3d 175, 186 (D.D.C. 2017) (finding no employee discretion in an internal policy that directed employees to "[p]ay special attention" to certain areas of the station). Rather than employ discretionary or conditional language, the Severe Weather Plan details an order of operations for snow and ice removal. *See generally* Severe Weather Plan. For example, the Severe Weather Plan mandates that Regional Snow Managers "are responsible for ensuring staff clears snow/ice, based upon the established priorities" and that various maintenance offices "are responsible for snow removal/ice control as indicated below[.]" *See id.* The Plan then identifies the snow-and-ice-removal priorities in two categories. "Priority One" locations include "Metrorail stations; platforms; entrances; walkways; access to remote street elevators; access roadways; reserved parking spaces and spaces designated for those with disabilities; bus lanes; kiss-n-ride, short-term and all-day parking lots; and parking garages" and the Jackson Graham Building. *See id.*; *see also* Lloyd Decl. ¶ 8. "Priority Two" locations include "[r]ail station parking garages, and parking lots" at specified locations and "[b]us division and rail yard parking lots and access roadways after more

7

than 4 inches of snow, if required." Severe Weather Plan; *see also* Lloyd Decl. ¶ 9. Notably, neither Priority list includes "architectural canopies." Given the imperative that WMATA staff clear snow and ice "based upon the established priorities," which do not reference architectural canopies, WMATA's policy must be to *not* remove snow and ice from the architectural canopies at its stations.

WMATA's sovereign immunity argument is therefore unpersuasive—and frankly confusing. Because *not* clearing snow and ice from architectural canopies is the established policy pursuant to the Severe Weather Plan, it cannot also be true that individual WMATA employees exercise discretion as to that policy. Discretion exists only when employees truly have a "choice" that is "fraught with public policy considerations." *Cope*, 45 F.3d at 448, 551. Despite WMATA's claim that employees "use their discretion" with respect to certain aspects of implementing the Severe Weather Plan, *see* Def.'s Mem. at 6, WMATA's other characterizations of the Severe Weather Plan and the Severe Weather Plan itself make clear that employees *do not* have a choice at all as to snow and ice removal from architectural canopies. *See, e.g.*, Lloyd Decl. ¶ 11.

WMATA's sovereign immunity in this case thus depends on a WMATA policy that is discretionary in its construct (the Severe Weather Plan) but confers no actual discretion to its employees with respect to the negligence alleged (the failure to clear architectural canopies of snow and ice). This Circuit has recognized that, "when establishing plans, specifications or schedules regarding the Metro[rail] system," WMATA is exercising its discretion, such that sovereign immunity applies. *Abdulwali v. WMATA*, 315 F.3d 302, 305 (D.C. Cir. 2003) (internal citation and quotation marks omitted). This is because such plans, specifications, or schedules involve "political, social, and economic" decisions that Section 80 was intended to protect. *See id.*; *Sanders*, 819 F.2d at 1155 ("WMATA should be immune . . . from judicial second-guessing

8

via tort suits of legislative and administrative decisions grounded in social, economic, and political policy." (internal quotation marks omitted)).  The Severe Weather Plan is undoubtedly a "plan regarding the Metrorail system" that involves "political, social, and economic" decisions.  Indeed, WMATA justifies its Severe Weather Plan with the policy considerations that went into its design. *See* Def.'s Mem. at 6 ("WMATA does not clear snow or ice from architectural canopies outside its stations because doing so would require specialized lift equipment, pose a safety hazard for employees and patrons, and impede safe station ingress and egress."); Lloyd Decl. ¶ 5 ("WMATA has a severe weather plan that prioritizes WMATA's snow and ice removal efforts based upon economic, political, and strategic factors, including resource limitations, safety considerations, and patrons' need for unencumbered access to its rail stations during inclement weather.").  Similar justifications made by WMATA for activities warranting sovereign immunity have been upheld as adequate.  *See, e.g.*, *Barksdale-Showell*, 965 A.2d at 23 (upholding the order of snow-and-ice-removal priorities even if it excluded mopping or drying platform tiles because the decision involved weighing the impact on the movement of passengers through the Metrorail system, resource and staff limitations, and WMATA's overall purpose to serve the public's need for transportation).  The Severe Weather Plan is similarly an exercise of WMATA's discretion.

When, as here, an employee conforms her conduct to the terms of a discretionary policy, the sovereign enjoys immunity.  As the Supreme Court put it in *Gaubert*, "if a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of [that policy]."  499 U.S. at 324.  In this case, WMATA employees were simply following the Severe Weather Plan when they did not clear snow and ice from the architectural canopy at

9

L'Enfant Plaza Metrorail station. And because the Severe Weather Plan is itself a discretionary policy, WMATA's employees' execution of the policy enjoys sovereign immunity.

Plaintiff relies on *Falco v. Washington Metropolitan Area Transit Authority*, No. 18-cv-2766 (JEB), 2020 WL 473887, at *1 (D.D.C. Jan. 29, 2020), to argue against WMATA's sovereign immunity. In *Falco*, the court held that WMATA could not claim sovereign immunity because the activity in dispute—mopping up water on the platform—was not discretionary. In reaching this holding, the court found that WMATA had failed to identify a "competing interest" or "any policy regarding evaporation (or anything else)" such that the activity could be considered discretionary. *See id.* at *3. WMATA had merely asserted that mopping the water would have been "costly and ineffective." *See id.*

Plaintiff asserts that *Falco* stands for the proposition that WMATA must identify both a "competing interest" against the decision not to clear snow and ice from architectural canopies and a "specific policy regarding the architectural canopies." *See* Pl.'s Opp'n at 3–4. Even assuming Plaintiff's reading of *Falco* is correct, the court's calculus remains the same. Taking the latter contention first, WMATA here does identify a specific policy regarding snow and ice removal: the Severe Weather Plan. Although the Severe Weather Plan does not specifically address architectural canopies, their exclusion from a comprehensive priorities list, as this court has found, is an element of the policy. Second, WMATA here identifies sufficient "competing interests." Unlike in *Falco*, WMATA does more than advance mere "money and choice" as reasons to find that the Severe Weather Plan involves policy decisions triggering sovereign immunity. As held above, the relevant discretion lies at the level of the policy itself rather than at the level of individual employee decision-making within that policy. WMATA justifies the Severe Weather Plan as a balance of many competing interests, including "resource limitations, safety

10

considerations, and patrons' need for unencumbered access to its rail stations during inclement weather." *See* Lloyd Decl. ¶ 5. And, as discussed above, this justification adequately supports a finding of discretionary sovereign immunity.

Thus, Plaintiff's arguments fail, and WMATA is entitled to sovereign immunity against Plaintiff's claims.[3]

## B.

Alternatively, even if sovereign immunity did not apply, Defendant's motion must be granted because Plaintiff failed to produce an expert to establish the national standard of care as required to make a prima facie case of negligence. A prima facie case of negligence requires the plaintiff to show there was "a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach." *Simms v. District of Columbia*, 699 F. Supp. 2d 217, 227 (D.D.C. 2010). To establish the requisite duty of care, courts require plaintiffs to present expert testimony "if the subject in question is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson." *Briggs v. WMATA*, 481 F.3d 839, 845 (D.C. Cir. 2007) (quoting *District of Columbia v. Arnold & Porter*, 756 A.2d 427, 433 (D.C. 2000)). Expert testimony is routinely required where there are "issues of safety, security and crime prevention." *Varner v. District of Columbia*, 891 A.2d 260, 267 (D.C. 2006).

As Plaintiff herself recognizes, snow and ice removal from architectural canopies is a matter of public safety, *see* Compl. ¶ 4, and decisions about how and where to prioritize the

---

[3] Plaintiff also asserts that WMATA's "failure to abate a known hazard, or a hazard that should have been known, is not the type of decision that is fraught with public policy considerations, and therefore should not be granted immunity." *See* Pl.'s Opp'n at 4. Plaintiff appears to argue that clearing snow and ice from the architectural canopy should have been so obvious—since snow and ice had accumulated and remained on the architectural canopy for several days—that public policy considerations were beside the point. *See id.* Putting aside the argument's conclusory terms, it fails because, as discussed, valid public policy considerations did drive WMATA's decision not to pursue the clearing of snow and ice from architectural canopies.

removal of ice and snow in a mass transit system is certainly "beyond the ken of the average layperson." Other tasks undertaken by WMATA both comparable and lesser in scale and expertise have been found to require expert testimony to establish a standard of care. *See, e.g.*, *Briggs*, 481 F.3d at 845 (rejecting the claim that, because the average person can distinguish between light and dark, lighting decisions at a construction site were within the realm of common knowledge); *Robinson v. WMATA*, 941 F. Supp. 2d 61, 67 (D.D.C. 2013) (confirming that expert testimony was required to establish the standard of care as to the operation of a bus).

The court cannot agree with Plaintiff that the removal of snow from architectural canopies above Metrorail stations is within the knowledge of the average District of Columbia resident. *See* Pl.'s Opp'n at 5. To justify her claim, Plaintiff points to D.C.'s Municipal Regulations, including one that allows residents to temporarily deposit snow or ice on the street or sidewalk if it becomes necessary in the process of removing snow or ice from the roof of a building. *See* D.C. Mun. Regs. tit. 24, § 1005.2 (2022). Plaintiff construes the existence of this regulation to mean that the average District of Columbia resident has knowledge about removing snow from roofs. Pl.'s Opp'n at 5. However, the municipal regulation that Plaintiff cites does not require the removal of snow and ice from roofs but *prohibits* such removal, unless the streets and sidewalks onto which the snow or ice is cast is immediately cleared thereafter. *See* D.C. Mun. Regs. tit. 24, § 1005.2.

Plaintiff also cites another municipal regulation, § 24-1700.1, which concerns the removal of snow and ice from sidewalks, not roofs. *See* D.C. Mun. Regs. tit. 24, § 1700.1 (2022). Something as commonplace to District of Columbia residents as shoveling snow from sidewalks might qualify as common knowledge that does not require expert testimony. But, as WMATA points out, "[a] juror's experience shoveling snow from their steps or driveway would not translate to an understanding of the challenges of removing snow from an elevated canopy over a moving

escalator into a crowded public transit station." Def.'s Reply to Pl.'s Opp'n, ECF No. 15, at 8. Plaintiff's failure to produce expert testimony to establish a standard of care is "fatal to [her] negligence claim." *See Briggs*, 481 F.3d at 841 (quoting *Scott v. District of Columbia*, 101 F.3d 748, 757 (D.C. Cir. 1996)).

Accordingly, "[b]y failing to present expert evidence of the relevant standards of care," Plaintiff here has "'fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *See Griggs v. WMATA*, No. 99-cv-1552 (RMU), 2002 WL 31174533, at *4 (D.D.C. Sept. 30, 2002) (quoting *Celotex*, 477 U.S. at 322).  The court thus would grant WMATA summary judgment for this independent reason even if WMATA is not immune from suit.

## IV.

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF No. 13, is granted. A final, appealable order accompanies this Memorandum Opinion.

Dated: July 8, 2022

Amit P. Mehta
United States District Court Judge